[960 NE2d 393, 936 NYS2d 624]

RAUL SALAZAR, Respondent, v NOVALEX CONTRACTING CORP. et al., Appellants. (And a Third-Party Action.)

Argued October 18, 2011; decided November 21, 2011

## POINTS OF COUNSEL

*White Quinlan & Staley, L.L.P.,* Garden City (*Arthur T. Mc-Quillan* of counsel), for Novalex Contracting Corp., appellant. I. The decision and order of the Appellate Division, First Department, which reversed the grant of summary judgment under Labor Law § 240 (1), and reinstated that claim was not properly made, wherein the plaintiff/respondent partially fell into the trench that was in the process of being filled as of the time of the accident. (*Mancini v Pedra Constr.,* 293 AD2d 453; *Magnuson v Syosset Community Hosp.,* 283 AD2d 404; *Miller v Weeden,* 7 AD3d 684; *Paolangeli v Cornell Univ.,* 296 AD2d 691; *Wells v British Am. Dev. Corp.,* 2 AD3d 1141; *Pursel v Wellco, Inc.,* 6 AD3d 1096; *Ozzimo v H.E.S., Inc.,* 249 AD2d 912; *Caradori v*

*Med Inn Ctrs. of Am.*, 5 AD3d 1063; *Kaleta v New York State Elec. & Gas Corp.*, 41 AD3d 1257; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509.) II. The decision and order of the Appellate Division, First Department, that reversed the grant of summary judgment under Labor Law § 241 (6) and reinstated that claim was not properly made, wherein the plaintiff acknowledged that part of his work was to fill the very trench with cement that he partially fell into.

*Law Offices of Epstein & Rayhill*, Elmsford (*Jonathan R. Walsh* of counsel), for 96 Rockaway, LLC, appellant. I. The First Department erred when it reversed the lower court's order granting summary judgment by reinstating plaintiff's claim under Labor Law § 240 (1) because plaintiff's accident was not height-related as contemplated by the meaning of the statute. (*Mancini v Pedra Constr.*, 293 AD2d 453; *Magnuson v Syosset Community Hosp.*, 283 AD2d 404; *Miller v Weeden*, 7 AD3d 684; *Paolangeli v Cornell Univ.*, 296 AD2d 691; *Wells v British Am. Dev. Corp.*, 2 AD3d 1141; *Pursel v Wellco, Inc.*, 6 AD3d 1096; *Ozzimo v H.E.S., Inc.*, 249 AD2d 912; *Caradori v Med Inn Ctrs. of Am.*, 5 AD3d 1063; *Kaleta v New York State Elec. & Gas Corp.*, 41 AD3d 1257; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509.) II. The First Department erred when it reversed the lower court's order granting summary judgment by reinstating plaintiff's claim under Labor Law § 240 (1) because plaintiff's accident occurred as part of the "usual and ordinary dangers" of construction work.

*Kral Clerkin Redmond Ryan Perry & Girvan*, Melville (*James V. Derenze* of counsel), for T-Construction Co., Inc., appellant. I. Plaintiff's claim that T-Construction Co., Inc. violated Labor Law § 240 (1) should be dismissed as plaintiff worked at ground level, did not fall from an elevated height and was not hurt by a falling object, and none of the specified protective devices applied. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509; *Toefer v Long Is. R.R.*, 4 NY3d 399; *Melber v 6333 Main St.*, 91 NY2d 759; *Pope v Safety & Quality Plus, Inc.*, 74 AD3d 1040; *Avila v Plaza Constr. Corp.*, 73 AD3d 670; *Barillaro v Beechwood RB Shorehaven, LLC*, 69 AD3d 543; *Mancini v Pedra Constr.*, 293 AD2d 453; *Magnuson v Syosset Community Hosp.*, 283 AD2d 404; *Somerville v Usdan*, 255 AD2d 500.) II. Plaintiff's claims under section 241 (6) of the New York State Labor Law should be dismissed. (*Samiani v New York State Elec. & Gas Corp.*, 199 AD2d 796; *Pereira v*

*Quogue Field Club of Quogue, Long Is.*, 71 AD3d 1104; *Nostrom v A.W. Chesterton Co.*, 15 NY3d 502; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Barillaro v Beechwood RB Shorehaven, LLC*, 69 AD3d 543; *Lupo v Pro Foods, LLC*, 68 AD3d 607; *Messina v City of New York*, 300 AD2d 121; *Piccuillo v Bank of N.Y. Co.*, 277 AD2d 93; *Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343; *Pellescki v City of Rochester*, 198 AD2d 762.)

*The Perecman Firm, P.L.L.C.*, New York City (*Peter Rigelhaupt* and *David H. Perecman* of counsel), for respondent. I. The plaintiff-respondent was injured as a result of a gravity related hazard within the scope of Labor Law § 240 (1) and, as such, the order of the First Department was, as a matter of law, properly made. (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333; *Martinez v City of New York*, 93 NY2d 322; *Carpio v Tishman Constr. Corp. of N.Y.*, 240 AD2d 234; *Bell v Bengomo Realty, Inc.*, 36 AD3d 479; *Trillo v City of New York*, 262 AD2d 121; *Clark v Fox Meadow Bldrs.*, 214 AD2d 882; *Stolt v General Foods Corp.*, 81 NY2d 918; *Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1.) II. The order of the Appellate Division reinstating plaintiff's Labor Law § 241 (6) cause of action was properly made, as the trench constituted a hazardous opening under 12 NYCRR 23-1.7 (b) (1) and was thus required to be guarded by a cover or safety railing, and the trial court erred in holding that it required plaintiff to fall through an opening to a level below. (*Olsen v James Miller Mar. Serv., Inc.*, 16 AD3d 169; *Messina v City of New York*, 300 AD2d 121; *Keegan v Swissotel N.Y.*, 262 AD2d 111, 94 NY2d 858; *Carpenter v 149 Edison St.*, 269 AD2d 751; *Misicki v Caradonna*, 12 NY3d 511; *Morris v Pavarini Constr.*, 9 NY3d 47; *Gallagher v Levien & Co.*, 72 AD3d 407.)

### OPINION OF THE COURT

PIGOTT, J.

Plaintiff Raul Salazar was injured in May 2004, while working in the basement of a Brooklyn building undergoing renovations. The property was owned by 96 Rockaway, LLC. Salazar was employed by T-Construction Co., Inc.; the general contractor was Novalex Contracting Corp. The accident occurred in the largest room of the basement, which had a trench system for piping. Salazar and the other workmen were laying a concrete floor. They were directed to pour and spread concrete over the entire basement floor, including the trenches. Before he began

work on the day he was injured, Salazar looked for, and visually located, the trenches.[1]

The concrete flowed from a truck into wheelbarrows placed in the basement, via a chute fed through a window. Workmen poured the wet concrete from the wheelbarrows onto the floor of the basement, where Salazar and others "pulled" the concrete with rakes, ensuring that the floor would be level. As Salazar explained the next stage of the process at his deposition, the trench system fills with concrete "by itself because the concrete runs and it fills it out . . . the concrete kind of slides down or runs down" into the trenches.

Salazar was injured after he stepped into a trench that was partially filled with concrete. He had been walking backwards across the floor, "pulling" concrete with a rake held in front of him, and looking forward, rather than in his direction of motion. As Salazar recalled the incident, "one of the trenches began to fill out with concrete, and at some point when I was pulling, walking backwards, . . . my foot got inside, into that hole." After Salazar's right foot hit the bottom of the trench, his right leg folded beneath him. Before being assisted out of the trench by his coworkers, Salazar tried to pull his leg out "on my own, myself, and that's how I hurt myself."

According to Salazar, the portion of the trench system into which he stepped was about two feet wide and "[b]etween 3 and 4 feet deep." There was no railing, barricade, or cover around or over the trench.

Salazar commenced a lawsuit against 96 Rockaway, LLC, Novalex Contracting Corp., and T-Construction Co., Inc., alleging, among other things, violations of Labor Law § 240 (1) and § 241 (6). Discovery and a third-party action ensued. T-Construction Co. moved for summary judgment, seeking dismissal of the complaint, and all cross claims against it. 96 Rockaway and Novalex Contracting Corp. cross-moved for identical relief. Supreme Court granted defendants' motions, and dismissed Salazar's complaint in its entirety (2007 NY Slip Op 52680[U] [2007]).

The Appellate Division reversed so much of Supreme Court's order as granted defendants' motions for summary judgment dismissing Salazar's Labor Law § 240 (1) and § 241 (6) claims,

---

**1.** Salazar testified at deposition that there were multiple trenches in the room. The general contractor's vice-president described a single, continuous trench. This dispute is not relevant to the disposition of the case.

denied the motions, and reinstated those claims (72 AD3d 418 [2010]). One Justice dissented. The Appellate Division granted defendants leave to appeal to this Court, certifying the question whether its order had been properly made (2010 NY Slip Op 79687[U] [2010]). We now reverse.

Liability under Labor Law § 240 (1) depends on whether the injured worker's "task creates an elevation-related risk of the kind that the safety devices listed in section 240 (1) protect against" (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 [2007]). The kind of accident triggering section 240 (1) coverage is one that will sustain the allegation that an adequate "scaffold, hoist, stay, ladder or other protective device" would have "shield[ed] the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 604 [2009] [emphasis removed], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Salazar argues that the trench into which he stepped should have been covered or barricaded in such a way as to prevent his fall.

In *Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.* (18 NY3d 1 [2011]), the plaintiff was injured when a nearby wall that was being demolished fell into two 10-foot-high unsecured metal pipes, causing them to topple onto him. This Court denied summary judgment to both parties, holding that an issue of fact existed as to whether the worker's injury resulted from the absence of a safety device statutorily prescribed under Labor Law § 240 (1). In doing so, the Court contrasted the facts of *Wilinski* with other cases in which summary judgment dismissing the complaint would have been warranted:

> "Here, the pipes that caused plaintiff's injuries were not slated for demolition at the time of the accident. This stands in contrast to cases where the objects that injured the plaintiffs were themselves the target of demolition when they fell. In those instances, imposing liability for failure to provide protective devices to prevent the walls or objects from falling, when their fall was the goal of the work, would be illogical. Here, however, securing the pipes in place as workers demolished nearby walls would not have been contrary to the objectives of the work plan" (*id.* at 11 [citation omitted]).

Here, the installation of a protective device of the kind that Salazar posits—assuming that such a device, although not

listed in Labor Law § 240 (1), was an "other device[ ]" within the meaning of the statute—would have been contrary to the objectives of the work plan in the basement. Salazar testified that he was directed to pour and spread concrete over the entire basement floor, a task that included filling the trenches.[2] Put simply, it would be illogical to require an owner or general contractor to place a protective cover over, or otherwise barricade, a three- or four-foot-deep hole when the very goal of the work is to fill that hole with concrete. Moreover, the record is clear that the purpose of the work here was to lay concrete over the entire basement. Since the liquid concrete would necessarily fill the trench and pour out over the surrounding floor areas, it would be impractical and contrary to the very work at hand to cover the area where the concrete was being spread, particularly since the settling of concrete requires that the work of leveling be done with celerity. Given that Labor Law § 240 (1) should be construed with a commonsense approach to the realities of the workplace at issue, defendants are entitled to summary judgment dismissing that claim.

■ Salazar's Labor Law § 241 (6) cause of action, predicated on a violation of 12 NYCRR 23-1.7 (b) (1) (i), fails for similar reasons.[3] That regulation states that "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part." Even assuming that the trench here constituted a "hazardous opening," 12 NYCRR 23-1.7 (b) (1) (i) cannot be reasonably interpreted to apply to a case like this one, where covering the opening in question would have been inconsistent with filling it, an integral part of the job. Hence, defendants are also entitled to summary judgment dismissing the Labor Law § 241 (6) claim.

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiff's Labor Law § 240 (1) and § 241 (6) claims dismissed, and the certified question answered in the negative.

Chief Judge LIPPMAN (dissenting). The majority misapplies this Court's recent holding in *Wilinski v 334 E. 92nd Hous. Dev.*

---

**2.** Contrary to the dissent's reading (*see* dissenting op at 142), Salazar's testimony does not suggest that the process of seepage whereby the trench he stepped in had filled with concrete "by itself" was unintentional.

**3.** Although the Appellate Division dissent analyzes 12 NYCRR 23-1.7 (b) (1) (iii), Salazar's brief makes clear that he relies upon 12 NYCRR 23-1.7 (b) (1) (i).

*Fund Corp.* (18 NY3d 1 [2011]), and errs by viewing the evidence in the light most favorable to defendants, rather than in the light most favorable to plaintiff, on defendants' motions for summary judgment. Therefore, I respectfully dissent.

The majority endeavors to create exceptions to Labor Law § 240 (1) that should not exist and to narrow arbitrarily the scope of the statute in concluding that it does not apply to this case in which an elevation-related risk was clearly present and the accident, which was caused by the force of gravity acting on the body of plaintiff, could have been prevented by the simple placement of a cover over the trench or a barrier around its perimeter.* Contrary to the position taken by the majority, this is precisely the type of case to which section 240 (1) was intended to apply. I also see no reason why the trench in this case is not a "hazardous opening" within the meaning of 12 NYCRR 23-1.7 (b) (1) that should have been covered. Because there exist triable issues of fact with regard to plaintiff's Labor Law § 240 (1) and § 241 (6) claims, I respectfully dissent.

In *Runner v New York Stock Exch., Inc.* (13 NY3d 599, 603 [2009]), we held that the "single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" and that test is certainly met in this case. In *Rocovich v Consolidated Edison Co.* (78 NY2d 509 [1991]), we clarified that "extent of the elevation differential" (here, measured by the depth of the trench) is not necessarily dispositive (*id.* at 514) and on this basis I conclude that based on plaintiff's deposition testimony as to the depth of the trench (which we must take as true for purposes of deciding defendants' motions for summary judgment), there was a significant elevation differential in this case. It is undisputed that no safety device was provided to plaintiff.

Instead of viewing the facts in the light most favorable to plaintiff and allowing this case to proceed to a trial, the majority sidesteps a glaring set of triable factual issues—principally, whether the trench was being actively filled at the time of the accident, and if it was not, whether it could have been temporarily covered or blocked off prior to being filled. During a deposition, plaintiff testified that at the time of the accident,

---

* Covers and barriers qualify as "other [safety] devices" within the meaning of the statute, which is not limited to devices expressly enumerated therein.

> "I was walking backwards, and at the same time I was pulling the concrete, and at the same time we were smoothing the concrete, then one of the trenches began to fill out with concrete, and at some point when I was pulling, walking backwards . . . my foot got inside, into that hole," and he also testified with regard to the trench that "it fill[ed] out by itself because the concrete r[an] and it fill[ed] it out."

When asked directly "is it not true that someone had actually poured concrete from the wheelbarrow into that trench prior to the accident?" plaintiff responded "[n]ot directly, because the concrete kind of slides down or runs down." It is therefore not clear from the record that the trench was purposely being filled at the time of the accident, yet the majority nevertheless concludes that this was the case. Plaintiff's testimony suggests otherwise—that the concrete in the trench into which his right leg fell had unintentionally seeped in. Defendants maintain that the trench was being purposely filled by plaintiff's coworkers at the time. In sum, based on this record we know only that the plan was to fill the trench at some point before the job was complete, but we do not know precisely when. There is a factual dispute about the sequencing of this aspect of the project that should not be resolved by this Court on an appeal from the denial of a summary judgment motion.

I agree that "Labor Law § 240 (1) should be construed with a commonsense approach to the realities of the workplace at issue" (majority op at 140). This is the principle we described in *Wilinski*, which simply means that courts should not lay down rules that are, as a practical matter, impossible to follow. We implicitly recognized in that case that it would be irrational to require the shoring up of a structure being demolished. However, in this case, because we do not know enough about the realities of this workplace, a trial is required in order for key factual determinations to be made regarding the specifics of the work plan as well as the feasibility of a cover or barrier in light of those parameters. A covering over or a barrier surrounding the trench would undoubtedly have greatly decreased the likelihood of an accident like the one that befell plaintiff and there is no reason why such a device could not have been used if the trench was not being filled at the time that plaintiff approached it while walking backwards.

Even if we were to assume a disputed fact, I believe that the majority's pronouncement that "it would be illogical to require

an owner or general contractor to place a protective cover over, or otherwise barricade, a three- or four-foot-deep hole when the very goal of the work is to fill that hole with concrete" (majority op at 140) is premature. This Court is not in a position to determine conclusively that it was impossible to fill the trench and protect plaintiff from the accident at the same time. That is a finding of fact that should be made after experts on construction techniques present their views regarding this subject at trial for the consideration of the factfinder. The factual assumption underlying the majority's entire analysis—that the planned order of the work was for the concrete to be poured onto the floor and then seep into the trench, such that the seepage was intentional—is not entirely consistent with the evidence or, on the present state of the record, with any coherent work strategy.

The majority's approach runs counter to the fundamental purpose of Labor Law § 240 (1). The statute, which is aimed at protecting workers from elevation-related risks and fostering safer working environments, should be construed liberally (see Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520-521 [1985] [holding that "with respect to section 240, . . . 'this statute is . . . for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was . . . framed' "], quoting Quigley v Thatcher, 207 NY 66, 68 [1912]). Plaintiffs in cases such as this should be afforded the protections of the statute designed to ensure the safety and physical well-being of workers.

I also believe that there are material factual issues as to plaintiff's Labor Law § 241 (6) claim. The trench here was a "hazardous opening" under 12 NYCRR 23-1.7 (b) (1) (i) and the regulation states that "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place." The majority's rationale for rejecting plaintiff's Labor Law § 241 (6) claim is identical to that which it uses to reject the Labor Law § 240 (1) claim and thus fails for the same reasons.

As there are genuine issues of material fact rendering the drastic remedy of summary judgment unavailable to defendants in this case, I dissent and would affirm the order of the Appellate Division and answer the certified question in the affirmative.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents and votes to affirm in a separate opinion in which Judges CIPARICK and JONES concur.

Order reversed, etc.