Bazdaric v Almah Partners LLC (2022 NY Slip Op 02189)





Bazdaric v Almah Partners LLC


2022 NY Slip Op 02189


Decided on March 31, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 31, 2022

Before: Manzanet-Daniels, J.P., Oing, Moulton, Scarpulla, Shulman, JJ. 


Index No. 159433/15 Appeal No. 14578 Case No. 2020-03296 

[*1]Srecko Bazdaric et al., Plaintiffs-Respondents,
v
Almah Partners LLC, et al., Defendants-Appellants.


Marshall Dennehey Warner Coleman & Goggin, P.C., New York (Richard Imbrogno of counsel), for appellants.
Elefterakis, Elefterakis & Panek, New York (Eileen Kaplan of counsel), for respondents.



Order, Supreme Court, New York County (Carol R. Edmead, J.), entered October 9, 2019, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion for summary judgment as to liability on their Labor Law § 241(6) cause of action and denied defendants' cross motion for summary judgment dismissing the § 241(6) cause of action, reversed, on the law, without costs, plaintiffs' motion denied and defendants' cross motion for summary judgment dismissing the § 241 (6) cause of action granted.
Plaintiff tripped and fell on a heavy-duty plastic covering that was placed on the stairs of an escalator to protect it from dripping paint while plaintiff was painting. In support of his claim under Labor Law § 241(6), plaintiff alleged that defendants violated Industrial Code Section 12 NYCRR 23-1.7 (d) (the regulation) which states:
"Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing."
Initially, we find that the covering intentionally placed on the escalator to protect it from dripping paint does not constitute a foreign substance under the regulation. A sensible interpretation of the wording of this regulation "calls for the application of the maxim ejusdem generis, the statutory canon that '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 (1991) (Circuit City Stores, Inc. v Adams, 532 US 105, 114-115 [2001]); see 242-44 E. 77th St., LLC v Greater N.Y. Mut Ins. Co., 31 AD3d 100, 103-104 [1st Dept 2006])["the meaning of a word in a series of words is determined by the company it keeps"] [internal quotations omitted]).
Sensibly interpreted, the heavy-duty plastic covering is not similar in nature to the foreign substances listed in the regulation, i.e., ice, snow, water or grease (see Stier v One Bryant Park LLC,113 AD3d 551, 552 [1st Dept 2014] [unsecured piece of masonite floor covering is not a slipping hazard contemplated by this regulation], citing Croussett v Chen, 102 AD3d 448 [1st Dept 2013]; see also Kane v Peter M. Moore Constr. Co., Inc., 145 AD3d 864, 869 [2d Dept 2016] [the plaintiff's slip and fall because of a drop cloth placed on the staircase was not caused by the defendant's failure to remove or cover a foreign substance under the regulation]; cf., DeMercurio v 605 W. 42nd Owner LLC, 172 AD3d 467 [1st Dept 2019] [triable issue as to whether a cleaning agent, "green dust," and not the protective brown paper floor covering, was the foreign substance which caused the slipping hazard implicating the regulation]).
Further[*2], it is not disputed that the covering was intentionally placed on the escalator to protect it from paint. In other words, the covering was part of the staging conditions of the area plaintiff was tasked with painting, making it integral to his work. Therefore, even if the regulation arguably contemplates plastic sheeting to be a slipping hazard, under the factual circumstances here, the integral to the work defense bars plaintiff's reliance on 12 NYCRR 23-1.7(d).
The integral to work defense "applies to things and conditions that are an integral part of the construction, not just to the specific task a plaintiff may be performing at the time of the accident" (Krzyzanowski v City of New York, 179 AD3d 479, 481 [1st Dept 2020]). In straining to find that the integral to the work defense is inapplicable here, the dissent focuses exclusively on plaintiff's and a foreman's testimony concerning whether the use of the covering was the best choice to protect the escalator while plaintiff was painting. However, nothing in our precedents suggests that a court should determine whether the material at issue is the best (or a poor) choice in making the ultimate determination of whether the material used is integral to the renovation work.
To the extent that the dissent's reasoning injects into the analysis consideration of the propriety of the material being used to determine the applicability of the integral to the work defense, that approach is not supported by our precedent (see Johnson v 923 Fifth Ave. Condominium, 102 AD3d 592 [1st Dept 2013]; Rajkumar v Budd Contr. Corp., 77 AD3d 595 [1st Dept 2010]). Thus, for example, in Johnson, the plaintiff tripped over a piece of plywood that had been purposefully laid over the sidewalk to protect it while unloading materials at a construction worksite. We held that such purposeful use of the plywood constituted an integral part of the work and affirmed dismissal of the Labor Law § 241(6) claim. Similarly, in Rajkumar, the plaintiff tripped over brown construction paper that was purposefully laid over newly installed floors to protect them while performing interior decorating work. Under those circumstances, we held that the paper covering constituted an integral part of the floor work on the renovation project.
There is nothing in these cases, or in any of our cases applying the integral to the work defense, indicating that the defendant must make an additional showing that "there was something intrinsic about the material in relation to the work." Indeed, it is hard to imagine how plywood (Johnson) or brown paper covering (Rajkumar) is "intrinsic" material in relation to protecting floors from renovation/construction work.
Additionally, the Supreme Court and the dissent incorrectly find liability pursuant to Industrial Code Section 23-1.7(e)(1). This section is inapplicable for the same reasons stated above with respect to Industrial Code Section 23-1.7 (d), namely that the plastic covering was an [*3]integral part of the work being performed (see Savlas v City of New York, 167 AD3d 546, 547 [1st Dept 2018] [steel plates covering openings into lower level of building project held integral part of construction, precluding violations of Code section 23-1.7(e)]; Conlon v Carnegie Hall Society, Inc., 159 AD3d 655 at 655 [1st Dept 2018] [section 241(6) claim based on violation of section 23-1.7(e)(1) dismissed where plaintiff injured installing sheetrock in stairwell when he tripped and fell over extension cord deemed an integral part of the work]). Moreover, section 23-1.7(e)(1) is not applicable because, here, the escalator was not serving as a "passageway" but rather was a work area (see Conlon, 159 AD3d at 655-66 [section 23-1.7(e) inapplicable as staircase was not serving as a "passageway" but was instead a "working area"]).
Further, the dissent attempts to distinguish Johnson and Rajkumar based on the fact that these cases were decided under 12 NYCRR 23-1.7(e)(2) rather than 12 NYCRR 23-1.7(e)(1). However, in Kyrzanowski, we specifically held that "'the integral to the work defense' . . . equally applies to Industrial Code § 23—1.7(e)(1), as well as § 23—1.7(e)(2)" (Krzyzanowski, 179 AD3d at 480).
Here, regardless of whether the heavy-duty plastic covering was the best choice, in retrospect, for the specific task of painting, there can be no dispute that the covering was purposefully laid to protect the escalator and the floor during the renovation project. Applying our precedent to the facts of this appeal, the covering was integral to the renovation work, and plaintiff failed to raise an issue of fact in opposition (cf. Krzyzanowski, 179 AD3d at 481 [factual issue exists as to whether protective covering purposefully installed on the floor is an integral part of the renovation project where no renovation work was occurring during the month of the accident]).
All concur except Manzanet-Daniels, J.P. and Moulton, J. who dissent in a memorandum by Moulton, J. as follows:




MOULTON, J. (dissenting)
 

I respectfully dissent.
The majority interprets a statute designed to protect workers' safety in a way that imperils workers' safety. According to the majority, if a material  in this case slippery plastic sheeting  was "intentionally placed" to advance the work, then it is "integral to the work" and therefore not a "foreign substance" or a "condition[]which could cause tripping" barred by Labor Law § 241(6) and Industrial Code §§ 23-1.7(d), 23-1.7(e)(1). To be sure, the plastic sheeting in this case was a non-porous covering that was "intentionally placed" to protect the escalator from paint spots. However, it provided no protection to the painter. To the contrary: the plastic sheeting introduced to the worksite a slippery condition that caused plaintiff's injuries.
Plaintiff Srecko Bazdaric alleges that he was injured while working as a painter at a construction renovation project in lower Manhattan. On the [*4]day of the accident, he was instructed by his foreman to paint the walls around an escalator between the second and third floors. The escalator had been taken out of service and was stationary. Bazdaric testified that a heavy-duty plastic sheeting covered the landing and the steps of the escalator. When he saw the plastic, Bazdaric, an experienced painter, told his foreman: "this is no way to work on this." The foreman responded with an expletive and went on to state: "why you complain?" and that "[he had] to do it" that way.
Bazdaric testified that the accident occurred when he was in the middle of the escalator. He walked down the escalator to get to the middle, where he was told to start. He placed buckets of paint two steps away from where he was working, leaving room between himself and the buckets. Bazdaric then took one step, slipped on the plastic sheeting, and fell. His back hit one of the paint buckets behind him. The back of his head, his neck, and his shoulder struck the escalator steps. After Bazdaric yelled for help his foreman appeared two to three minutes later. Although Bazdaric explained to his foreman that he was hurt and in pain, the foreman responded that he would be fine. Bazdaric went back to painting after buying Advil on his break. He explained that he went back to work despite his pain because he was afraid to lose his job. He alleges that he has been unable to work since that day.
Lucas Calamari, who was employed as a project superintendent by the general contractor J.T. Magen & Company, testified at his deposition to the following facts. Calamari was employed by Magen for six years as a project superintendent and for three years as a superintendent. At this project, he had the authority to direct the subcontractors to stop any work that he deemed unsafe. Calamari confirmed that he observed plastic sheeting on the escalator steps after the accident. After the accident he spoke with the foreman, and directed that the plastic covering be removed. Calamari, who recalled previously working with painters who painted around escalators, did not know that painters at this job were standing on plastic sheeting to paint the walls around the escalators. Had he observed this, Calamari testified, he would have directed that the plastic sheeting be removed and replaced with a safer covering. If plastic was used, he would expect that it would be held securely and be made of a non-slippery version of the material. Calamari described previously seeing wood protection on escalator steps to protect against paint spills and splatters. He also observed painters working for Bazdaric's employer using drop cloths that were made from cloth and not plastic. Thus, in his opinion, the plastic sheeting used was the wrong type of material for the diagonal work area of the escalator steps.
After discovery, plaintiffs moved for summary judgment on liability under Labor Law §§ 200 and 241(6). Defendants cross-moved for dismissal of those causes [*5]of action. Supreme Court granted plaintiffs' motion under Labor Law § 241(6) predicated on violations of 12 NYCRR 23-1.7(d) and (e)(1). The court granted defendants' cross motion to the extent of dismissing plaintiffs' Labor Law § 200 claim and plaintiffs' Labor Law § 241(6) claim predicated on a violation of Industrial Code § 23-1.7(e)(2). Plaintiffs did not appeal the dismissal of those claims.
Supreme Court granted plaintiffs' motion under Labor Law § 241(6), concluding that Bazdaric's and Calamari's unrebutted testimony established that defendants violated 12 NYCRR § 23-1.7(d) and (e)(1) and that defendants' violations proximately caused Bazdaric's injuries.
Defendants appealed.
Section 241(6) imposes a nondelegable duty on "owners and contractors to 'provide reasonable and adequate protection and safety' for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501-502 [1993]). Because a violation of Labor Law § 241(6) obviates the need for a plaintiff to demonstrate that a defendant exercised supervision or control over the worksite, a plaintiff must show the violation of a specific and applicable Industrial Code regulation to "benefit from the reduced burden of proof applicable to causes of action asserted under Labor Law § 241 (6)" (id. at 502, 505).
Supreme Court correctly found that plaintiffs established that defendants violated § 23-1.7(d) as a matter of law. That regulation provides:
"(d) Slipping hazard. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing."
All necessary elements are present in this case. The escalator was both a "passageway" and "elevated work area" within the meaning of that regulation because Bazdaric was obliged to walk down the escalator to reach the area in the middle of the escalator to perform his work (see Harasim v Eljin Constr. of N.Y., Inc., 106 AD3d 642, 643 [1st Dept 2013] [the permanent staircase where the plaintiff allegedly slipped was a "passageway" within the meaning of Industrial Code § 23-1.7(d) because it "was the sole means of access to the work site, and it was not an open area accessible to the general public"]; Conklin v Triborough Bridge & Tunnel Auth., 49 AD3d 320, 321 [1st Dept 2008] [a makeshift ladder covered in slippery mud and placed on sloped ground as a ramp was a "passageway" under Industrial Code § 23-1.7(d) where "the ramp, which is alleged to have been unsafe, provided a means of access to different working levels"]). Further there is no issue of fact that the plastic covering was a "slippery condition."
Finally, while the phrase "foreign substance" is not defined in the Industrial [*6]Code, courts "construe words of ordinary import with their usual and commonly understood meaning" (Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019] [internal quotation marks and citation omitted]). As the plastic sheeting was a physical material not normally present on an escalator, it constitutes a "foreign substance" within the meaning of Industrial Code § 23-1.7(d) (see Velasquez v 795 Columbus LLC, 103 AD3d 541, 542 [1st Dept 2013])..
Supreme Court also correctly found liability under Industrial Code § 23-1.7(e)(1). That section provides:
"(e) Tripping and other hazards.
"(1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered."
Again, all the necessary elements are present in this case. The plastic sheeting was a condition in a "passageway" that "could cause tripping." The use of the word "tripping" and the absence of the word "slipping" in this section is of no moment. While a chimerical distinction between the two terms has sometimes turned up in the case law (see e.g. Velasquez at541) the more recent authority abandons it; whether Bazdaric slipped and fell or tripped and fell was not dispositive (Lois v Flintlock Constr. Servs., LLC (137 AD3d 446, 448 [1st Dept 2016]; see also Serrano v Consolidated Edison Co. of N.Y. Inc. (146 AD3d 405, 406 [1st Dept 2017] [applying Industrial Code § 23-1.7 (e)(2)]).
The majority erroneously concludes that the integral to the work defense bars plaintiffs' reliance on Industrial Code §§ 23-1.7(d), 23-1.7(e)(1) based on a flawed definition of the defense that insulates a defendant for "purposeful" use of a material regardless of whether the material is integral to the work. If a material was "intentionally placed," the majority reasons, then it was "integral to the work" and will not run afoul of the two Industrial Code sections at issue herein. This framing of the defense ignores the necessity of showing that there was something intrinsic about the material in relation to the work, i.e., whether it was part of a structure being worked on, whether it was part of the work performed by the plaintiff, or whether it was specifically designed for the task of painting on a stepped diagonal worksite.
The integral to the work defense is derived from our case law. In determining whether the defense applies in this case we are guided by the principle that "[t]he Industrial Code should be sensibly interpreted and applied to effectuate its purpose of protecting construction laborers against hazards in the workplace" (St. Louis v Town of N. Elba, 16 NY3d 411, 416 [2011]).
Although the integral to the work concept is not specifically defined in any one case, a review of our case law illustrates the proper application of the defense, which is consistent with the commonly understood meaning of the [*7]word "integral" (see Merriam-Webster Online Dictionary [https://www.merriam-webster.com/dictionary/integral] [definition includes "essential to completeness" or "formed as a unit with another part"]).
The defense has been applied to conditions that caused slipping or tripping when the condition was part of the building structure.[FN1] The defense has also been applied when the condition is that which the plaintiff was charged with removing.[FN2]
The cases most arguably analogous to the one at bar are those that concern a product "specially designed and required" for the task (see Galazka v WFP One Liberty Plaza Co., LLC, 55 AD3d 789, 789-790 [2d Dept 2008] [Labor Law § 241(6) claim was properly dismissed where the wet plastic upon which the plaintiff slipped was "specially designed and required to collect the accumulation of asbestos fibers during asbestos removal, and that safety regulations required the asbestos fibers to be constantly wet so as to prevent them from filling the air"]).
The common theme in all of these cases is that the defense applies when it was necessary to perform the work in the manner that it was done (see e.g. Salazar v Novalex Contr. Corp., 18 NY3d 134 [2011]). In Salazar, the plaintiff fell after his foot got stuck inside a hole at the bottom of a trench as he was raking freshly poured concrete (id. at 138). The Court of Appeals reversed this Court and affirmed Supreme Court's dismissal of the plaintiff's Labor Law § 241(6) claim, as well as the plaintiff's Labor Law § 240 (1) claim, based on the integral to the work defense (id. at 139-140). The defense was applicable to both causes of action, the Court reasoned, because covering the hole would be "impractical and contrary to the very work at hand" and "inconsistent with filling it, an integral part of the job" when "the very goal of the work is to fill that hole with concrete" (id.).
Here, defendants do not argue that it was necessary to perform the work using the plastic sheeting. Notably, in their cross motion below defendants conceded that the "[p]lastic sheeting was admittedly a poor choice for the purpose it was used." Moreover, the proposed alternative of covering the escalator steps with boards or a cloth drop cloth would not be inconsistent with the painting work performed. In fact, it would be consistent with how the work was previously performed according to Calamari's unrebutted testimony. The unsafe plastic covering was not a necessary part of the structure, it was not a condition that Bazdaric was charged with removing or installing, and it was not specially designed and required for the task at hand. Contrary to defendants' argument, the fact that someone intentionally placed the plastic covering on the escalator with the goal of protecting the escalator - - but not the worker - - does not make the plastic covering integral to the work.
The majority's flawed definition of the defense is noticeably built upon a misreading of Rajkumar v Budd Contr. Corp. ([*8]77 AD3d 595 [1st Dept 2010]) and Johnson v 923 Fifth Ave. Condominium (102 AD3d 592 [1st Dept 2013]).
Both Rajkumar and Johnson were decided under 12 NYCRR 23-1.7(e)(2) which applies to, among other things, "scattered tools and materials."[FN3] That regulation is not at issue here because Supreme Court dismissed the corresponding claim and plaintiffs did not appeal the dismissal. The references in Rajkumar and Johnson concerning whether the material was "purposefully laid" were made in the context of rejecting the plaintiff's argument that Industrial Code § 23-1.7(e)(2) applied because the plaintiff tripped over "loose or scattered material" (Rajkumar, 77 AD3d at 595-596; Johnson, 102 AD3d at593). Thus, the cases stand for the proposition that where the condition is "purposefully laid" it cannot be considered "scattered" material under Industrial Code § 23-1.7(e)(2) (see Rajkumar, 77 AD3d at 595-596 ["[h]ere the plaintiff did not trip over loose or scattered material, but rather, over brown construction paper that was purposefully laid over newly installed floors to protect them. Such paper covering constituted an integral part of the floor work on the renovation project and could not be construed to be a misplaced material over which one might trip"]). Krzyzanowski v City of New York (179 AD3d 479 [1st Dept 2020]), also cited by the majority, further illustrates the point. The fact that a material is purposefully used to protect the work does not obviate the need to show that the material is integral to the work (Krzyzanowski, 179 AD3d at 481 [the defendants did not establish their entitlement to summary judgment because the evidence was "insufficient to establish as a matter of law that the boards were a protective floor covering integral to the work being done"] [emphasis added]).
Contrary to the majority's assertion, I am not suggesting that we determine what material is best suited for the work in deciding whether the material is integral to the work. Rather I do not see how plastic sheeting can possibly be considered integral to the work where the uncontroverted evidence demonstrates that it was dangerously unsuited for the work.
The majority also invokes the maxim ejusdem generis, which posits that "when a list of two or more descriptors is followed by more general descriptors, the otherwise wide meaning of the general descriptors must be restricted to the same class, if any, of the specific words that precede them" (Robert A. Katzmann, Judging Statutes 50 [2014]). Specifically, the majority argues that the slippery plastic sheeting is not a "foreign substance" because the regulation's broad reference to "any other foreign substance which may cause slippery footing" is limited to conditions such as "ice, snow, water and grease."
While maxims can provide stable rules of construction, they should not be used mechanically to advance an interpretation of statutory language that runs athwart a statute's fundamental purpose. "The Industrial [*9]Code should be sensibly interpreted and applied to effectuate its purpose of protecting construction laborers against hazards in the workplace" (St. Louis v Town of N. Elba, 16 NY3d 411, 416 [2011]). Had the legislature intended to limit § 23-1.7(d)'s reference to "any other foreign substance which may cause slippery footing" to a narrow class of slipping hazards, contrary to the Industrial Code's overall purpose, it could have referred to "ice, snow, water, grease and any other similar foreign substance which may cause slippery footing" (emphasis added).
Additionally, the case cited in support of the maxim by the majority, Circuit City Stores v Adams (532 US 105 [2001]), notes that "[c]anons of construction need not be conclusive and are often countered, of course, by some maxim pointing in a different direction" (id. at 115). Here such a maxim exists, pointing in a contrary direction. It is well-established that every sentence in a statute should be given meaning and every provision in a statute should be read in harmony (2A N. Singer Sutherland on Statutes and Statutory Construction § 47:6 at 305 [7th ed 2014]). The majority overlooks the fact that the first sentence in § 23-1.7(d) provides that "[e]mployers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition." To read this sentence in harmony with following sentence containing the phrase "any other foreign substance which may cause slippery footing," that later phrase must be given a broad interpretation, not a narrow one.
In addition, our case law does not support the majority's unduly narrow interpretation of the regulation. For example, when we concluded that § 23-1.7(d) applied to a slip and fall on "food" in Colucci v Equitable Life Assur. Socy, we emphasized the language "any other foreign substance which may cause slippery footing" (218 AD2d 513, 514 [1st Dept 1995]). We also, for example, found that § 23-1.7(d) applied to a slip and fall on "debris" which is certainly unlike ice, snow, water, or grease (see Lopez v City of New York Tr. Auth., 21 AD3d 259 [1st Dept 2005]).
The majority cites cases, such as Kane v Peter M. Moore Constr. Inc. (145 AD3d 864 [2d Dept 2016]) that conclude, without explanation, that § 23-1.7(d) is inapplicable. In addition, the cases do not find that § 23-1.7(d) is inapplicable on the basis that the condition at issue is dissimilar to ice, snow, water, or grease. It may be that the reasoning behind those cases is based on the defendants' and the majority's argument that the condition cannot be considered a "foreign substance" because it was an integral part of the work. The problem with that reasoning, as discussed above, is that in this case the uncontroverted evidence demonstrates that the plastic sheeting was indisputably not integral to the work because it was the wrong material for the job. DeMercurio v 605 W. 42nd Owner LLC (172 AD3d 467 [[*10]1st Dept 2019]),cited by the majority, illustrates this point. The motion court held that the brown paper and the cleaning agent green dust upon which the plaintiff allegedly slipped was not a "foreign substance" because both substances were integral to the work (see DeMercurio v 605 W. 42nd Owner LLC, 2018 WL 8732213, *5 [Sup Ct, NY County 2018]). The motion court noted that the brown paper was intentionally used to protect the wood floor and the cleaning agent was intentionally used to prevent dust from rising (id.).
We reversed the motion court's dismissal of plaintiffs' Labor Law § 241 (6) claim predicated on § 23-1.7(d) and concluded that the alleged presence of green dust on the floor "created a triable issue as to whether a 'foreign substance' created a slippery condition on the floor, in violation of this Code section, and whether such condition caused plaintiff's accident" (172 AD2dat 467). Although not explicitly noted in the decision, the general contractor's superintendent testified at his deposition that the green dust was intended to be cleaned up before the paper was put down and therefore, should not have been present. Thus, as DeMercurio illustrates, it is improper to grant summary judgment under a Labor Law § 241 (6) claim predicated on § 23-1.7(d) when it cannot be said, as a matter of law, that the condition is integral to the work.
The Labor Law seeks to foster workplace safety. Today's decision undermines that purpose. For the foregoing reasons, I would affirm the decision below.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 31, 2022



Footnotes

Footnote 1: See e.g. O'Sullivan v IDI Constr. Co., Inc., 28 AD3d 225, 226 [1st Dept 2006] [Labor Law § 241(6) claims were properly dismissed because the permanently placed electrical pipe embedded in a poured concrete floor over which the plaintiff tripped was integral to the work], affd 7 NY3d 805 [2006]); Letterese v A&F Commercial Bldrs., L.L.C., 180 AD3d 495, 495 [1st Dept 2020] [Labor Law § 241(6) claim was properly dismissed because the affixed rebar dowel over which plaintiff tripped was integral to the work].

Footnote 2: See Castillo v Big Apple Hyundai, 177 AD3d 473, 474] [1st Dept 2019] [Labor Law § 241(6) claim should have been dismissed because the safe over which the plaintiff tripped was integral to his work of removing debris from the premises in connection with demolition work]), or, installing (see Spencer v Term Fulton Realty Corp., 183 AD3d 441, 442 [1st Dept 2020] [Labor Law § 241(6) claim was properly dismissed where the cart that the plaintiff was pushing got stuck on iron rods causing the plaintiff to fall where the rods were integral to the plaintiff's work of passing the rods to workers for incorporation into the concrete superstructure].

Footnote 3: 12 NYCRR 23-1.7 (e)(2) provides:
"(2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed."