# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 11
Srecko Bazdaric et al.,
     Appellants,
    v.
Almah Partners LLC, et al.,
     Respondents.

Brian J. Isaac, for appellants.
Scott A. Korenbaum, for respondents.
New York State Academy of Trial Lawyers, amicus curiae.

RIVERA, J.:

Plaintiffs are entitled to summary judgment as to liability on their Labor Law § 241 (6) cause of action for workplace injuries resulting from a fall on a plastic covering placed over a stopped escalator as part of a renovation project paint job. Plaintiffs established that the covering was a slipping hazard that defendants failed to remove in violation of Industrial Code 12 NYCRR 23-1.7 (d), rendering defendants liable under Labor Law § 241

- 1 -

(6). Additionally, contrary to the Appellate Division's conclusion, the plastic covering was not integral to the paint job but was created by use of a nonessential and inherently slippery plastic that caused plaintiff employee's injuries. We therefore reverse.

I.

Plaintiffs Srecko Bazdaric and his spouse Zorka filed this action for damages arising from disabling injuries that Srecko sustained at a renovation project worksite when he slipped on a plastic covering on an escalator in an area he was assigned to paint. The injuries left Srecko unable to work. Plaintiffs alleged, among other things, violations of Labor Law § 241 (6) under various sections of the Industrial Code against defendant owners of the premises where the injury occurred—Almah Partners LLC, Almah Mezz LLC, 180 Maiden Lane LLC, Downtown NYC Owner LLC—and defendant general contractor J.T. Magen & Company, Inc (J.T. Magen).[1] Defendant J.T. Magen hired non-party subcontractor Kara Painting (Kara), which employed Srecko as a painter on the project.

Plaintiffs moved for partial summary judgment on liability under Labor Law § 241 (6) based on violations of Industrial Code 12 NYCRR 23-1.7 (d) and 12 NYCRR 23-1.7 (e) (1) and (2). In support, they submitted Srecko's testimony that he complained to Kara's

---

[1] Supreme Court dismissed plaintiffs' claims under Labor Law § 200, and neither party moved on the Labor Law § 240 claim, so neither are at issue on this appeal.

foreman, "this is no way to work on this," when he saw the unsecured plastic covering the escalator that he was required to stand on to complete the paint job. In response, the foreman cursed at him, chastised him for complaining, and told him he "ha[d] to do" the job on the plastic. Srecko thus walked to the middle of the escalator, put his paint can down, took a step to begin the job, and slipped and fell on the plastic covering. A three-gallon paint can fell on his leg, a paint can hit his back, and his body hit the metal of the escalator. To establish the plastic was not appropriate to the task, plaintiffs relied on Srecko's testimony, including his assertion that drop cloths were available on the premises. Plaintiffs also submitted testimony from Lucas Calamari, defendant J.T. Magen's superintendent, that the plastic was the wrong type of covering for the escalator steps, and that if he had seen that covering before Srecko's fall, he would have directed that it be removed and replaced with a safer covering on the steps. Calamari admitted that Kara was using drop cloths at this particular site, and that in his experience drop cloths are less slippery than the plastic that was placed on the escalator. He also acknowledged that he had previously seen escalators instead covered with wood. After Srecko's fall, Calamari directed that the plastic covering be removed, and "it was removed right away" and "wasn't used anymore." Defendants opposed and cross-moved to dismiss the Labor Law § 241 (6) cause of action, arguing, as relevant here, that 12 NYCRR 23-1.7 (d) and (e) (1) were inapplicable and the plastic covering was integral to the work. Defendants further asserted that Srecko was at fault, relying on an affidavit from the foreman that Srecko placed and used the plastic covering even though canvas drop cloths were available, a characterization of the events

denied by Srecko. Supreme Court granted plaintiffs summary judgment on the Labor Law § 241 (6) cause of action based on violations of 12 NYCRR 23-1.7 (d) and (e) (1).[2]

A divided Appellate Division reversed and granted defendants' cross-motion for summary judgment dismissing the Labor Law § 241 (6) cause of action over a two-Justice dissent (203 AD3d 643 [1st Dept 2022]). As relevant here, the majority applied the maxim ejusdem generis to conclude that the plastic covering was not a foreign substance under 12 NYCRR 23-1.7 (d) because the plastic covering was "not similar in nature to the foreign substances listed in the regulation, i.e., ice, snow, water, or grease" (id. at 643). The majority also concluded that plaintiffs' claim was barred because the plastic covering was integral to the work (id.).[3] The dissent maintained that the plastic sheeting, as "a physical material not normally present on an escalator," constituted a foreign substance under the ordinary meaning of the term and therefore comes within the scope of 12 NYCRR 23-1.7 (d), and further that the plastic covering was not integral to Srecko's work because there was nothing intrinsic to the plastic used that was essential to the paint job (id. at 643 [Moulton, J., dissenting]). The Appellate Division granted plaintiffs leave to appeal and certified the question whether its decision and order was properly made (2022 NY Slip Op 67803[U] [1st Dept 2022]). We answer that question in the negative.

---

[2] Plaintiffs do not appeal Supreme Court's rejection of their claim under 12 NYCRR 23-1.7(e) (2).

[3] The Appellate Division majority also rejected plaintiffs' claim under 12 NYCRR 23-1.7 (e) (1) as similarly inapplicable.

II.

Plaintiffs argue that the plastic covering was a foreign substance for purposes of 12 NYCRR 23-1.7 (d) because it was not a part of the escalator, and that this interpretation best supports the broad remedial purposes of the Labor Law. Plaintiffs further argue that the majority below misapplied the "integral to the work" doctrine on the facts of this case. We conclude that plaintiffs established their entitlement to summary judgment under Labor Law § 241 (6) because they demonstrated, prima facie, that the plastic covering created a slippery surface in violation of 12 NYCRR 23-1.7 (d) and it was not integral to Srecko's paint job assignment. In response, defendants failed to raise any triable issue of fact.

A.

"On a motion for summary judgment, facts must be viewed 'in the light most favorable to the non-moving party' " (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 335 [2011]). The movant "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Once this showing has been made, . . .the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*id.*).

Labor Law § 241 (6) provides:

"All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

Labor Law § 241 (6) is a "hybrid" statute, as the first sentence "reiterates the general common-law standard of care," while the second sentence imposes a nondelegable duty with respect to compliance with rules of the Commissioner which contain "specific, positive command[s]" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 503-504 [1993]; *see also Toussaint v Port Auth. of NY & NJ*, 38 NY3d 89, 93 [2022] ["It is the second sentence, mandating compliance with the rules of the Commissioner, that creates a nondelegable duty—but only with respect to certain regulations."]). Thus, an owner or general contractor "is vicariously liable without regard to [their] fault," and "even in the absence of control or supervision of the worksite," where a plaintiff establishes a violation of a specific and applicable Industrial Code regulation (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY 2d 343, 348-350 [1998]; *see Toussaint v Port Auth. of NY & NJ*, 38 NY3d 89, 94 [2022]; *Nostrom v A.W. Chesterton Co.*, 15 NY3d 502, 507 [2010]). As the Court has emphasized, "[t]he Industrial Code should be sensibly interpreted and applied to effectuate its purpose of protecting construction laborers against hazards in the workplace" (*St. Louis v Town of N. Elba*, 16 NY3d 411, 416 [2011]).

Plaintiffs argue that defendants violated 12 NYCRR 23-1.7 (d), "General Hazards, slipping hazards", which provides:

"Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing."

In *Rizzuto* the Court explained that this section:

"unequivocally directs employers not to '*suffer or permit any employee*' to use a slippery floor or walkway, and also imposes an affirmative duty on employers to provide safe footing by requiring that any 'foreign substance which may cause slippery footing *shall be removed to provide safe footing.*' As such, 12 NYCRR 23-1.7 (d) mandates a distinct standard of conduct, rather than a general reiteration of common-law principles, and is precisely the type of 'concrete specification' that *Ross* requires." (91 NY2d at 350-351 [internal citations omitted]).

Thus, an owner or general contractor is liable where the negligent act of some party to or participant of the construction project violated the provision and caused the employee's injury.

To meet their summary judgment burden, plaintiffs here were required to show that: (1) section 23-1.7 (d) applied under the circumstances; (2) defendants or Kara violated that section's specific commands; (3) this violation alone, or considered with other undisputed factual evidence, constitutes negligence; and (4) the violation caused plaintiffs' injuries (*see Rizzuto*, 91 NY2d at 351; *Ross*, 81 NY2d at 501-505; *Morris v Pavarini Constr.*, 22 NY3d 668, 675 [2014]). In support of their motion, plaintiffs submitted Srecko's testimony that he was assigned to paint in an area where an escalator was covered with a slippery plastic covering, he informed his supervisor the plastic was not appropriate for the paint job, he slipped and fell as he started his assigned task in the middle of the escalator, on the

way down his back hit a paint bucket and the escalator steps, and that, as a result of the injuries from the fall, he can no longer work. Plaintiffs submitted Calamari's corroborating testimony that the plastic covering was "the wrong type of covering for the escalator steps", if he had seen the covering before Srecko fell he would have directed Kara and the foreman to remove the plastic and put a safer covering on the steps, in accordance with his instructions the covering was removed after Srecko's fall and was not used again, he had seen drop cloth coverings on the work site that, in his experience, were less slippery than plastic, and that he had previously observed wood coverings being used for these types of paint jobs. Plaintiffs also submitted evidence of Srecko's injuries and Zorka's loss of consortium. In their opposition, defendants conceded that Srecko slipped on a plastic covering intentionally placed on the escalator and that the "[p]lastic sheeting was admittedly a poor choice for the purpose it was used." Thus, plaintiffs established all the factual predicates for liability under Labor Law § 241 (6) if Industrial Code § 23-1.7 (d) applies on the facts of this case. We now turn to that question.

B.

The textual requirements of section 23-1.7 (d) are satisfied here. The escalator is clearly the type of work surface enumerated in this section.[4] Plaintiffs also established that

---

[4] Although defendants argued that the escalator was not a "passageway," their argument was directed to a different subsection of the Industrial Code, 12 NYCRR 23.1-7(e), and premised on the fact that this section is split into two subdivisions, 23.1-7(e)(1) ("passageways") and 23.1-7(e)(2) ("working areas"), which 12 NYCRR 23.1.7(d) is not. Though plaintiffs originally also argued for liability under 12 NYCRR 23.1-7(e)(1), they

the plastic covering was not part of the escalator and this foreign substance created a slippery condition. Thus, defendants violated 12 NYCRR 23-1.7 (d)'s express prohibition against the use of this work surface without providing safe footing from a slipping hazard.

Defendants' argument, adopted by the Appellate Division majority, that the plastic covering is not a "foreign substance" for purposes of 12 NYCRR 23-1.7 (d) because it is unlike the substances listed in this section is unpersuasive. Defendants rely on the maxim of ejusdem generis that "general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words" (*Circuit City Stores, Inc. v Adams*, 532 US 105, 115 [2001], quoting 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.17 [1991] ). Defendants ignore that "canons of construction need not be conclusive" (*Circuit City Stores, Inc. v Adams*, 532 US 105, 115 [2001]), and that "however helpful the maxims when discriminately used, they should not be abused as talismanic" (*Becker v Huss Co.,* 43 N.Y.2d 527, 540 [1978]). Instead, these interpretive aids are deployed to achieve the legislative goals.

Whether this particular covering was a foreign substance within the meaning of 12 NYCRR 23-1.7(d) depends on its relation to the area where Srecko was assigned to work, and the covering's uniform properties. As to its relation to the work area, the plastic covering was not a component of the escalator and was not necessary to the escalator's functionality. Quite the opposite, as it would have been impossible to operate the escalator

do not argue for liability under that section before this Court.  Accordingly, we do not address this argument.

if covered with plastic. Therefore, it was, by definition a substance foreign to the escalator (*see* Merriam-Webster.com Dictionary, foreign [https://www.merriam-webster.com/dictionary/foreign] ["not normally found in an area or part"], substance [https://www.merriam-webster.com/dictionary/substance] ["physical material from which something is made or which has a discrete existence]).

As to whether the covering's properties are the type encompassed within the affirmative mandate of 12 NYCRR 23-1.7 (d), because that section specifically lists ice, snow, water and grease, the catchall reference to "other foreign substance" includes those substances that share a quality common to the enumerated items. The listed items are, by their nature, types of material that are slippery when in contact with an area where someone walks, seeks passage, or stands, and, when the substance is present, would make it difficult if not impossible to use the work area safely, necessitating one of the affirmative mitigating measures set forth in section 23-1.7 (d) as a means to provide safe footing. The plastic covering used here similarly made Srecko's work area slippery upon contact, with the result that Srecko could not traverse the plastic-covered escalator without risking a fall.

Interpreting 12 NYCRR 23-1.7 (d) as we do, to include the plastic covering, accords with the text and achieves this section's specific purpose of protecting workers against slipping hazards. Defendants' proposed limitation on "foreign substance" is nonsensical and would thwart this purpose.

III.

Defendants also argue that the plastic covering was integral to the work and therefore they cannot be liable for plaintiffs' fall and attendant injuries under Labor Law § 241 (6). Defendants, and the Appellate Division majority, misconstrue this doctrine, which applies only when the dangerous condition is inherent to the task at hand, and not, as is the case here, when a defendant or third party's negligence created a danger that was avoidable without obstructing the work or imperiling the worker.

*Salazar v Novalex Contr. Corp.* (18 NY3d 134 [2011]) is instructive. The plaintiff in that case sued under Labor Law sections 240 (1) and 241 (6) for injuries sustained when he stepped into a partially-filled basement trench while laying a concrete floor over the basement. The Court concluded that defendants were entitled to summary judgment dismissing both claims and held that the provision of the Industrial Code at issue—a different subsection of section 23-1.7, which applies to hazardous openings which are falling hazards—did not apply because "covering the opening in question would have been inconsistent with filling [the trench], *an integral part of the job*" (*id*. at 140 [emphasis added]) (*see also O'Sullivan v IDI Constr. Co., Inc*., 7 NY3d 805 [2006] [permanently installed protruding electrical pipe plaintiff tripped on was integral to the work of constructing the high-rise building]). The doctrine thus recognizes that certain work assignments are, by their nature, dangerous but still permissible, and the particular commands of the Industrial Code may not apply if they would make it impossible to conduct the work. Thus, in *Salazar* it was inherent to the job of filling a trench that the plaintiff work near an unfilled opening, an obvious falling hazard. The doctrine does not,

as the Appellate Division majority mistakenly concluded, absolve a defendant of liability for the use of an avoidable dangerous condition or for failure to mitigate the danger, including as specifically provided by the Industrial Code, if preventive measures would not make it impossible to complete the work.

Here, standing on a stopped escalator while painting required that the steps be covered to prevent the paint from falling on the escalator machinery and potentially damaging the escalator, and also to prevent the work area from becoming slippery and thus hazardous to Srecko or any other worker who needed to walk on the steps. Thus, the use of some cover was integral to Srecko's assignment to paint around the escalator. But that does not mean that any cover used—even one that was inherently slippery—was necessarily "integral," particularly where a safer alternative would have accomplished the same goal. The plastic covering that was placed on the escalator was not integral to the paint job because it made Srecko's work area slippery, creating one of the hazards that the cover was intended to avoid. Contrary to defendants' and the Appellate Division majority's view, this was not merely a poor choice of material but an inherently dangerous one. Defendant was in a position to avoid this danger because, as Calamari testified, there were alternative coverings—drop cloths and wood panels—that were familiar, previously-used options that would have achieved the goal of protecting the worker from injuries caused by a slipping hazard and also protected the escalator from possible damage. A contrary holding would absolve employers of liability for using any means of accomplishing a task,

even if it is the most dangerous. This distorted interpretation finds no support in the Industrial Code or our case law.

## IV.

Plaintiffs demonstrated the applicability and a violation of 12 NYCRR 23-1.7 (d) that resulted in Srecko's fall and injury. In response, defendants failed to produce any evidence raising a triable issue of fact as to whether the plastic covering was a foreign substance or caused a slippery footing. Moreover, defendants failed to establish their defense that the plastic covering was integral to Srecko's work and safe to use under the circumstances. Thus, plaintiffs are entitled to summary judgment as to liability based on 12 NYCRR 23-1.7 (d).

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiffs' motion insofar as it sought summary judgment as to liability on their Labor Law § 241 (6) cause of action granted, defendants' motion insofar as it sought summary judgment on the Labor Law § 241 (6) cause of action denied, and the certified question answered in the negative.

GARCIA, J. (concurring):

The issue on this appeal is whether defendant owners—Almah Partners LLC, Almah Mezz LLC, 180 Maiden Lane LLC, Downtown, NYC Owner, LLC—and defendant general contractor—J.T. Magen & Company, Inc.—can be held vicariously liable for

plaintiff Srecko Bazdaric's workplace injury. Plaintiff, who had been assigned by his employer to paint the walls and ceiling of an escalator, slipped and fell on the protective plastic sheeting which covered the escalator steps. To hold defendants liable for this accident under Labor Law § 241 (6), plaintiff must allege a violation of an Industrial Code provision "mandating compliance with concrete specifications" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). While I concur in result with the majority denying the defendants' motion for summary judgment, I write separately to make clear that to qualify as a "concrete specification[]," 12 NYCRR 23-1.7 (d) requires that a foreign substance cause the slippery condition referred to in the first sentence of the provision (*see id.*).

Supreme Court granted plaintiff's Labor Law § 241 (6) motion for summary judgment to the extent it relied on 12 NYCRR 23-1.7 (d). The court did not address whether the plastic was a foreign substance because it found "[d]efendants have violated 12 NYCRR 23-1.7 (d) if they permitted a slippery condition on the escalator." The Appellate Division reversed and granted defendants' motion for summary judgment (203 AD3d 643, 643 [1st Dept 2022]). The Court invoked the principle of ejusdem generis to conclude that the plastic sheeting was not a foreign substance because it "is not similar in nature to the foreign substances listed in the regulation, i.e., ice, snow, water or grease" (*id.* at 644). The Court then determined that "even if the regulation arguably contemplates plastic sheeting to be a slipping hazard, under the factual circumstances here, the integral to the work defense bars plaintiff's reliance on 12 NYCRR 23-1.7 (d)" (*id.*).

"As a general rule, when an employee is injured in the course of his employment, his sole remedy against his employer lies in his entitlement to a recovery under the Workers' Compensation Law" (*Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152, 156 [1980], citing Workers' Compensation Law § 11; *see also Williams v Hartshorn*, 296 NY 49, 50 [1946]; *Gonzalez v Armac Indus.*, 81 NY2d 1, 8-9 [1993]). Workers' compensation is an exclusive remedy with only limited exceptions, such as where the employer commits an intentional tort against the employee (*see Mylroie v GAF Corp.*, 81 AD2d 994, 995 [3d Dept 1981], *affd* 55 NY2d 893 [1982]). However, while Workers' Compensation generally does not allow actions against *employers* for accidental injuries suffered in the course of employment, employees may bring actions against *owners* and *general contractors* under certain circumstances.

One avenue for doing so is Labor Law § 200 (1), which codifies a "common-law duty imposed upon an owner or general contractor to maintain a safe construction site" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]). However, it is well settled that to recover under Labor Law § 200 (1), a plaintiff must show that an owner or general contractor had "the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*id.*, quoting *Russin v Louis N. Picciano & Son*, 54 NY2d 311, 317 [1981]). In *Comes v New York State Elec. & Gas Corp.* (82 NY2d 876, 877 [1993]), to take one example, we held that the Appellate Division correctly dismissed a Labor Law § 200 (1) claim where "there [was] no evidence that defendant exercised supervisory control" over the moving of a steel beam.

Labor Law § 241 (6), at issue here, provides another means for seeking recovery from owners and general contractors, imposing a nondelegable duty to " 'provide reasonable and adequate protection and safety' for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Ross*, 81 NY2d at 501-502, quoting Labor Law § 241 [6]).  Because the duty is nondelegable, unlike the duty imposed by Labor Law § 200 (1), plaintiffs "need not show that defendants exercised supervision or control over [the] worksite in order to establish [a] right of recovery" (*id.* at 502).  However, this vicarious liability is limited: "only 'provisions of the Industrial Code mandating compliance with *concrete specifications*' give rise to a nondelegable duty under Labor Law § 241 (6)" (*see Toussaint v Port Auth. of N.Y. & N.J.*, 38 NY3d 89, 94 [2022] [emphasis added], quoting *Ross*, 81 NY2d at 505).  The Court in *Ross* reasoned that allowing plaintiffs to use "broad, nonspecific regulatory standard[s] as predicate[s]" under Labor Law § 241 (6) would "seriously distort the scheme of liability for unsafe working conditions," render Labor Law § 200 (1) "all but superfluous," and run contrary to legislative intent (81 NY2d at 504-505).

The Industrial Code section at issue here must be interpreted within this framework:

> "Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing" (12 NYCRR 23-1.7 [d]).

While we have held that 12 NYCRR 23-1.7 (d) "mandates a distinct standard of conduct" (*Rizzuto*, 91 NY2d at 351) and satisfies *Ross*, that conclusion flows from reading the second

sentence of the regulation to inform the meaning of the first.  Absent any context, the first sentence is clearly a general reiteration of common law principles.  To qualify as mandating compliance with a "concrete specification[]" (*see Ross*, 81 NY2d at 505), the "slippery condition" referenced in the first sentence must be caused by the "foreign substance" described in the second.  Taken as a whole, 12 NYCRR 23-1.7 (d) "mandates a distinct standard of conduct" by requiring that employees not be permitted to use a floor or any other elevated surface which is in a slippery condition due to "[i]ce, snow, water, grease [or] any other foreign substance" and by further requiring that such a substance be removed or otherwise remedied "to provide safe footing."  In *Rizzuto*, the plaintiff alleged that diesel fuel—clearly a "foreign substance"—inadvertently sprayed into his work area and caused the slippery condition (81 NY2d at 347).  A contrary reading of 12 NYCRR 23-1.7 (d) would indeed create common law negligence liability under the first sentence of the provision (*see Toussaint*, 38 NY3d at 110 [Wilson, J. dissenting] [supporting a broad interpretation of *Rizzuto* that would in fact create common law negligence liability]).

The majority's holding that "defendants violated 12 NYCRR 23-1.7 (d)'s express prohibition against the use of this work surface without providing safe footing from a slipping hazard" (majority op at 9) is somewhat ambiguous.  However, the preceding sentence concluding that "[p]laintiffs . . . established that the plastic covering was not part of the escalator and this foreign substance created a slippery condition" thereby establishing a violation of 12 NYCRR 23-1.7 (d) (majority op at 8-9), combined with the significant attention given to the question of whether the plastic sheeting was a foreign substance (majority op at 9-10), makes clear enough that the foreign substance referred to

in the second sentence must cause the slippery condition referred to in the first.  Clarity in our interpretation of 12 NYCRR 23-1.7 (d), always important, is especially crucial in this case, where Supreme Court based its holding on an overly broad reading of the first sentence of that provision, untethered to any requirement that the plastic sheeting was a "foreign substance."

Although a close question, I agree that the plastic sheeting was a "foreign substance" within the meaning of 12 NYCRR 23-1.7 (d).[1]  I do not agree, however, that any substance "not part of the escalator" (majority op at 9) would qualify as such.  I would hold instead that plastic sheeting shares the same qualities that make "ice, snow, water and grease" hazardous when introduced into a qualifying work area.

Order reversed, with costs, plaintiffs' motion insofar as it sought summary judgment as to liability on their Labor Law § 241 (6) cause of action granted, defendants' motion insofar as it sought summary judgment on the Labor Law § 241 (6) cause of action denied, and certified question answered in the negative. Opinion by Judge Rivera. Chief Judge Wilson and Judges Troutman and Halligan concur. Judge Garcia concurs in result in an opinion, in which Judges Singas and Cannataro concur.

---

[1] I also agree that the integral to the work exception does not apply.