## Small v Fulton Star, LLC

### 2023 NY Slip Op 34576(U)

### December 28, 2023

### Supreme Court, Kings County

### Docket Number: Index No. 504541/2021

### Judge: Debra Silber

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 9 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 28th day of December, 2023.

P R E S E N T:

HON. DEBRA SILBER, Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROBERT SMALL,

                              Plaintiff,

        - against -

FULTON STAR, LLC
and TOUCHSTONE HOMES LLC,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DECISION/ORDER**

Index No. 504541/2021

Motion Sequence No. 2

The following papers read herein:                    NYSCEF Documents

Notice of Motion and Affidavits (Affirmations) Annexed and Exhibits     26-44
Opposing Affidavits (Affirmations) and Exhibits          51-58
Reply          59

Upon the foregoing papers, plaintiff moves, in mot. seq. 2, for an order, pursuant to

CPLR 3212, granting him partial summary judgment on the issue of liability against

defendants pursuant to Labor Law §240(1). For the reasons which follow, the motion is

granted.

### *Background*

Plaintiff commenced the instant action on February 25, 2021, by electronically filing

a summons and verified complaint. Plaintiff claims therein that defendant Fulton Star, LLC

was the owner of the premises known as 108 Downing Street, Brooklyn, NY, and that the

[* 1]

other defendant, Touchstone Homes LLC (hereafter "Touchstone") was the general contractor. The note of issue was filed after this motion was filed, and thus the motion was timely. This motion was filed on August 22, 2023, and defendants, who are both represented by the same firm, opposed the motion, then plaintiff filed a reply. Notwithstanding their opposition, defendants' attorneys failed to appear on October 5, 2023, the date the motion was scheduled to be heard, and thus it was submitted without oral argument and on defendants' default in appearance.

On the date of the subject accident, December 9, 2020, plaintiff was employed by All State 12 General Contracting Corp.[1] (hereafter "All State"), a subcontractor hired by Touchstone. Plaintiff alleges that defendants failed to provide him with a safe place to work and failed to offer proper equipment and/or safety devices so as to prevent him from being injured at the worksite. Specifically, he alleges that as he was walking on a floor covered with plywood, the plywood collapsed, and he fell approximately fifteen feet down to the basement and sustained serious injuries. His accident was captured on video. The complaint asserts causes of action pursuant to Labor Law sections 240(1), 241(6) and 200, as well as for common law negligence.

Plaintiff alleges that there had been supports under the plywood, but that at some point on the day of his accident, they had been removed. Plaintiff claims that at all relevant times, he was engaged in work within the scope of the Labor Law.

---

[1] This is the business plaintiff testified that he worked for. It is a New York corporation. It is the party that contracted with Touchstone in Doc 33. Plaintiff's attorney seems to have garbled the business name in his affirmation.

[* 2]

In support of his motion for summary judgment on his Labor Law §240 (1) cause of action, plaintiff submits an affirmation from counsel, the EBT transcripts for himself and the witness who testified on behalf of both defendants, the pleadings, the contract between Fulton Star and Touchstone, the contract between Touchstone and All State, a hyperlink to the video of the accident, an accident report which is not signed and is not in admissible form, a copy of a stop work order issued on 12/15/20 by the NYC Department of Buildings, "because of a violation of building code 3301.7[2] . . . or because work was being performed in a dangerous or unsafe manner," photographs, and a report from an investigator for the insurance company, which is also not in admissible form and was not considered.

It must be noted here that the video was not submitted in admissible form and could not be considered. In order for the court to watch a video submitted as an exhibit to a motion, counsel must e-file Form EFM-4 "Notice of Hard Copy Filing" and describe the item which is not electronically filed, and then actually give the video to the court. Plaintiff did neither (see *Amezquita v RCPI Landmark Props.*, 194 AD3d 475 [1st Dept 2021]). Electronically filing a piece of paper with a hyperlink is insufficient. Further, the court's software blocks access to such links. Someday soon, NYSCEF will permit the filing of video files, but it does not permit the electronic filing of anything but PDF's as yet.

Plaintiff testified at his EBT, held on April 20, 2022, that he started working for All State a few days before his accident. He was hired to be a carpenter and All State was doing the superstructure work. It was the only company on site at that point. He had completed a

---

[2] "Documents to be maintained on site"

62-hour OSHA course [Doc 29 Page 25]. On the day of his accident, he had arrived at 7:00 a.m. At about 3:00 p.m., he left his work area in the basement to go to the bathroom. He had to go up to the first floor. He climbed up the ladder, which was there for that purpose, and "the first step I made like I went right through" [*id.* Page 34]. Plaintiff was shown still photos and the accident video at his deposition. He testified that the ladder was the only way out of the basement, so "everybody walk right here all day" [*id.* Page 42]. He had not noticed anything wrong with the plywood when he arrived in the morning, or when he went to lunch, or when he returned from lunch. After he fell, plaintiff asked "the guys to call somebody for help" [Page 44]. He identified the foreman in the video and said he did not know his name. They discussed the request and refused to call an ambulance because it would "shut down" the job [Page 45] so they took him to the hospital themselves. He identified the people who took him as Sneh Gabani and Luis, an "owner's rep". His left foot and ankle were causing the most pain. He was helped to the car by Sneh and Ian Richie. At the emergency room, they x-rayed his left ankle and told him it was not broken and to stay off of it. Sneh took him home. Ultimately, he learned that "the ligaments in the ankle was completely torn, same thing with the knee. The lower back, they said, like, the fluid in the spine -- I don't know exactly what it is or how to explain that part" [Page 59]. The remainder of his EBT discusses his medical treatment.

Plaintiff also submits the deposition of Farzin Kimiabakhsh, who was deposed virtually on May 2, 2022 [Doc 30]. He testified that he is a manager for both defendant Fulton Star and defendant Touchstone. The owners of Fulton Star LLC are his wife and a

[* 4]

"distance relative" who are the only two members, and Touchstone has three members, his wife and two other people, one with the same last name as his.

Mr. Kimiabakhsh testified that he was not on the job site on the date of the plaintiff's accident. From his testimony, he visited the site "once or twice a week" [*id.* Page 32]. He reviewed the daily logs. He said Fulton Star is the owner of this one property only, and Touchstone is a general contracting company [*id.* Page 11]. He acknowledged that Touchstone was the general contractor at this job site. They were constructing a new eight-story mixed use building. There was no site safety manager employed by Touchstone, and All State had the site safety person. He believes his name is Ricardo Silva [*id.* Page 25]. At the time of the plaintiff's accident, they were in the superstructure phase of construction. He did not think any other subcontractors were there on that day. He had not worked with All State before [*id.* Page 31].

Mr. Kimiabakhsh was asked "when did it become known that there were no approved plans on the site?" [*id.* Page 55] and he responded "after the accident" [*id.*]. He was asked "[i]s it unsafe to be working without approved plans" and he responded "·they should have had signed and sealed plans on the job prior to starting, erecting any formworks there" [*id.* Page 56].

Asked about the plaintiff's accident, Mr. Kimiabakhsh said he received a phone call from Ian Richie, who worked for Touchstone and was the site's "competent person" to inform him about the accident. He was told that the plaintiff "he took a bathroom break, and came up the ladder, and stepped on the area that they were working, and the form gave away, and he fell down. And -- and All State 12 project manager and site safety guy, I think they

[* 5]

took him for medical attention to make sure that he's being taken care of – treated immediately" [*id.* Page 57]. The next day he called plaintiff to see how he was doing. He did not do any investigation of the accident.

Mr. Kimiabakhsh testified that he reported the accident to the NYC Buildings Department himself, and they sent an inspector to the job site. The inspector issued several violations, but he could not say for what [*id.* Page 60]. There was also a stop work order, but he could not remember if it was issued on the day after the accident or on another date [*id*]. He could not remember if he was at the site when the inspector came. He was shown an accident report and said he had not filled it out and had not seen it before [*id.* Page 63]. The report he made was on-line on the NYC Department of Buildings' website. He was shown photos but could not say if he had seen them before [*id.*]. He did not know who took them or when [*id.* Page 67]. He was shown the stop work order and testified that it was not rescinded for three months, because the "Building Department concrete audit unit wanted to review the file" [*id.* Page 65]. He was shown another incident report, identified as "plaintiff's 5" and said he had seen it before, and it was All State's report [*id.* Page 74].

Mr. Kimiabakhsh said he also spoke to Sneh, who was the project manager at All State, and Sneh described the accident to him as plaintiff "walked into an area that it was supposed to be limited, no access, and he stepped on the -- a -- a form that they were working underneath. They had to make some adjustment, and form was not secure while they were doing it, and [plaintiff] fell down" [*id.* Page76].

Counsel next showed the witness the video of the accident. He had seen it before. He confirmed that at that time, the ladder was the only exit from the basement [Page 78]. He

[* 6]

said he did not know the plaintiff, but that he knew that he had worked for the foundation contractor who did the foundation work before All State came to do the superstructure work. Mr. Kimiabakhsh testified that All State's "crew was working in the area fixing -- fixing a mistake in the -- in previous form to correct this mistake, and that's where they were working on. So this was an area that it was supposed to be access limited, no access" and "during orientation, it was discussed that that area is off limits" [*id.* Page 82]. He then said "well, obviously Mr. Small fell, so there should have been probably more limitation, more, I guess, caution tapes or to -- to -- to remind the people not to go into this area" [*id.* Page 83]. He agreed that in the video there was nothing visible to warn anyone not to walk in that area [*id.*].

Mr. Kimiabakhsh was then asked, "And whose responsibility is it to tell Mr. Small that he should not be walking in that area?" and he replied "All State" [*id.* Page 85] and that "Mr. Small should have been informed and known that this is an area that they were working. He must have passed by people working underneath there" [*id.*]. Mr. Kimiabakhsh said he did not know what plaintiff was working on, or which crew he was on. He acknowledged that they were working without any approved plans on site and had apparently put a beam in the wrong place the prior day, so All State had to relocate it.

Plaintiff's attorney avers that " Plaintiff is entitled to summary judgment on his Labor Law §240(1) [cause of] action against Defendants Fulton Star, LLC and Touchstone Homes LLC, as the evidence establishes that said Defendants were the owner and the general contractor of the subject property; that Plaintiff was a covered worker entitled to the statute's protection; that the unbraced portion of the plywood flooring lacked proper warning signals;

that the plywood flooring collapsed out from under the Plaintiff, which was captured by Touchstone's on-site video camera, causing him to fall and sustain personal injuries. Plaintiff was not recalcitrant nor was he the sole proximate cause of his accident" [Doc 27 ¶58].

Counsel sites several cases which granted summary judgment to the plaintiff on similar facts. For example, in *Cavanagh v Mega Contr., Inc.*, 34 AD3d 411 [2d Dept 2006], the plaintiff fell from the first floor to the basement of a building undergoing renovation, after a portion of the first-floor subfloor collapsed. It was because the first-floor subfloor was not properly braced, and no safety devices were provided to help prevent or break his fall. In opposition, the court notes that no triable issue of fact was raised. Accordingly, the Second Department held that the trial court properly granted the branch of the plaintiff's motion which was for summary judgment on the issue of liability on the cause of action based on a violation of Labor Law § 240(1).

### *Defendants' Arguments in Opposition*

In opposition to plaintiff's partial summary judgment motion, defendants only submit an attorney's affirmation, a memo of law, the same EBT transcripts which plaintiff provided, and an affidavit from Luis, the "owner's rep," which is not submitted in admissible form. If the attorneys for the defendants had appeared on the return date, it still could not be considered. A witness who provides an affidavit who does not speak English requires an affidavit from the translator. To be clear, there is a statute which governs, which was not complied with. CPLR §2101(b) states "Each paper served or filed shall be in the English language which, where practicable, shall be of ordinary usage. Where an affidavit or exhibit annexed to a paper served or filed is in a foreign language, it shall be accompanied by an

[* 8]

English translation and an affidavit by the translator stating his qualifications and that the translation is accurate." Here, the witness signed his name under a rubber stamp in Spanish that states that the document, written in English, was translated for him into Spanish, and that <u>he</u> attests that it was correctly translated. He cannot attest to the accuracy of the translation if he cannot read English.

In any event, it is within the court's discretion to decide if it will read the opposition papers if the attorney couldn't bother to read the court's rules or the email sent by chambers to all attorneys the week before the return date with instructions and show up on the return date. The court elects to not read the attorney's affirmation and memo of law, which would be mere legal argument and not evidence. Nothing else was submitted in opposition to the motion except the inadmissible affidavit discussed above.

### *Discussion*

### **Labor Law §240(1)**

Labor Law §240(1) states, in relevant part, that:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed . . ."

The purpose of Labor Law §240(1) is to protect construction workers "from the pronounced risks arising from construction work site elevation differentials" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]; *see also Rocovich v Consolidated Edison*

[* 9]

*Co.*, 78 NY2d 509, 514 [1991]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).  Therefore, Labor Law §240(1) is implicated in an injury that directly flows from the application of the force of gravity to an object or to the injured worker performing a protected task (*Gasques v State of New York*, 15 NY3d 869 [2010]; *Vislocky v City of New York*, 62 AD3d 785, 786 [2d Dept 2009], *lv dismissed* 13 NY3d 857 [2009]; *see also Ienco v RFD Second Ave., LLC*, 41 AD3d 537 [2d Dept 2007]; *Ortiz v Turner Constr. Co.*, 28 AD3d 627 [2d Dept 2006]; *Lacey v Turner Constr. Co.*, 275 AD2d 734, 735 [2d Dept 2000]; *Smith v Artco Indus. Laundries*, 222 AD2d 1028 [4th Dept 1995]).  The duty to provide "proper protection" against elevation-related risks is nondelegable; therefore, owners, contractors and their agents are liable for violations even if they have not exercised supervision and control over either the subject work or the injured worker (*Zimmer v Chemung County Performing Arts, Inc.*, 65 NY2d 513, 521 [1985] [owner or contractor is liable for Labor Law §240(1) violation "without regard to . . . care or lack of it"]).

However, Labor Law §240(1) does not apply to "any and all perils that may be connected in some tangential way with the effects of gravity" (*Ross v Curtis-Palmer Hydro-Elec. Co,* 81 NY2d 494 at 501 [1993]).  Instead, "Labor Law §240(1) should be construed with a commonsense approach to the realities of the workplace at issue" (*Salazar v Novalex Contr. Corp.*, 18 NY3d 134, 140 [2011]).  "Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law §240(1).  Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Harrison v State of New York*, 88 AD3d 951, 952 [2d Dept

[* 10]

2011], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2d Dept 2001]; *see also Gutman v City of New York*, 78 AD3d 886, 887 [2d Dept 2010]).  A successful cause of action pursuant to Labor Law §240(1) requires that the plaintiff establishes both "a violation of the statute and that the violation was a proximate cause of his injuries" (*Skalko v Marshall's Inc.*, 229 AD2d 569, 570 [2d Dept 1996], citing *Bland v Manocherian*, 66 NY2d 452 [1985]; *Keane v Sin Hang Lee*, 188 AD2d 636 [2d Dept 1992]; *see also Rakowicz v Fashion Inst. of Tech.*, 56 AD3d 747 [2d Dept 2008]; *Zimmer,* 65 NY2d 513 at 524 ).

Here, the court finds that plaintiff makes a prima facie case for summary judgment on his Labor law §240(1) claim.  The testimony indicates that the workers had started working on the superstructure without any approved plans, or if they had been approved, they were not on the site to refer to, put a beam in the wrong place, then removed it so it could be relocated without warning the workers that they had removed the support under the plywood floor.  They did not remove the plywood so there would be an obvious hole, which would have had to be fenced, nor did they put up anything to warn the workers not to walk in the area.  The area was right at the top of the ladder which was the only means of egress from the basement.  Mr. Kimiabakhsh claimed he was told that the workers were warned in the morning at their safety meeting, which is hearsay, but plaintiff testified that there was no safety meeting that morning [Doc 29 Page 23].

Plaintiff has submitted undisputed evidence that he was a covered worker under the Labor Law, that while he was working, he walked on a plywood floor which he had walked on three times earlier that day, which suddenly collapsed under him, and he fell to the floor of the basement below.  In a case with similar facts, *Rubio v NY Proton Mgt., LLC*, 192

[* 11]

AD3d 438, 439 [1st Dept 2021], the court found that the plaintiff "established prima facie defendants' violation of Labor Law § 240(1), as he showed that a plywood sheet covering a three-foot deep trench at the construction site where he was working gave way when he walked across it, causing him to fall into the trench below and suffer injury. The unsecured plywood sheet through which plaintiff fell was an inadequate safety device . . . The motion court properly rejected defendants' argument that plaintiff was not exposed to a gravity-related risk that required protection under the statute. The gravity-related risk was the three-foot deep trench, and the unsecured plywood sheet placed over it was inadequate, because it gave way, and failed to protect plaintiff from injury" [internal citations omitted].

Here, the testimony of the defendants' witness does not refute the plaintiff's version of the facts and does not raise a triable issue of fact. Therefore, plaintiff has shown that Labor Law §240(1) was violated, and that the violation was a proximate cause of his accident.

### *Conclusion*

Accordingly, it is **ORDERED** that plaintiff's motion, mot. seq. #2, for an order awarding him partial summary judgment on the issue of liability pursuant to Labor Law §240(1) against both defendants is granted.

The foregoing constitutes the decision and order of the court.

**E N T E R**,

_____

**Hon. Debra Silber, J.S.C.**

[* 12]