Lourenco v City of New York (2024 NY Slip Op 03540)

Lourenco v City of New York

2024 NY Slip Op 03540

Decided on June 27, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 27, 2024

Before: Oing, J.P., Moulton, Kapnick, Mendez, Shulman, JJ. 

Index No. 23614/16E Appeal No. 1816 Case No. 2023-00843 

[*1]Venicio Lourenco, Plaintiff-Appellant,
v
City of New York, Defendant-Respondent, Metropolitan Transportation Authority, et al., Defendants.

Lisa M. Comeau, Garden City, for appellant.
Clausen Miller PC, New York (Joseph J. Ferrini of counsel), for respondent.

Order, Supreme Court, Bronx County (Lucindo Suarez, J.), entered December 20, 2022, which, to the extent appealed from as limited by the briefs, granted defendant City of New York's motion for summary judgment dismissing the common-law negligence and Labor Law §§ 200 and 241(6) claims against it, and denied plaintiff's motion for partial summary judgment as to liability on the Labor Law § 241(6) claim predicated on Industrial Code (12 NYCRR) §§ 23-1.7(d), 23-1.7(e)(1) and (2), 23-2.1(a)(1), 23-2.2(d), and 23-3.3(k)(1)(ii), unanimously modified, on the law, to grant plaintiff's motion as to the Labor Law § 241(6) claim insofar as predicated on Industrial Code §§ 23-1.7(d) and 23-1.7(e)(1) and (2), and to deny the City's motion as to those claims and the common-law negligence and Labor Law § 200 claims, and otherwise affirmed, without costs.
This action arises from an accident that occurred during the reconstruction of Fordham Plaza, a commercial and transportation hub in the Bronx. The City owned the property and hired plaintiff's employer, Padilla Construction Services, Inc., as the general contractor. Plaintiff's work involved demolishing and rebuilding part of Fordham Plaza, including the sidewalk. The accident occurred when plaintiff, while moving a long metal beam on his shoulder through a passageway, slipped and tripped on a large piece of plastic sheeting covering a rock.
At his deposition, plaintiff testified that he and his coworkers were in the process of dismantling a sidewalk bridge and rebuilding it at another location. After dismantling the sidewalk bridge, plaintiff and his coworkers placed the pieces inside the station at the Plaza. Plaintiff testified that he picked up one of the heavy beams and began walking with it to the new location for the sidewalk bridge, which was about 80 feet from where he picked up the beam.
Plaintiff walked down a very narrow "passage" for about 30 feet "inside of the station" with the heavy beam on his shoulder. He explained that he saw rocks, pieces of concrete, and pieces of wood on the ground. Plaintiff recognized the rocks as part of a concrete sidewalk that Padilla had previously dismantled. He explained that Padilla used pieces of wood to pour cement for a new sidewalk. Plaintiff testified that he saw a 40-foot aluminum extension ladder (not fully opened, as the station's ceiling was 18-feet high) leaning up against the wall inside the station "in the middle of the way" where plaintiff "had to pass." Plaintiff testified that he could not walk to the left of the ladder because there "was a lot of dirt" there, so he had to go under the ladder.
As plaintiff tried to avoid the ladder, his left foot slipped on the plastic, causing him to do a "kind of split." He also testified that the rock underneath the plastic caused him to lose his balance. The beam that he was carrying struck the ladder, which contributed to his fall. Apart from plaintiff, no one witnessed the accident.
Plaintiff explained [*2]that the plastic and the rock were part of loose debris that workers would deposit in "piles" in the station until the debris was cleared away. Padilla would remove the debris with a truck or Bobcat every "three days, a week." According to plaintiff, the plastic was used to cover cement when it was raining. Three days before the accident, plaintiff complained to his superintendent that the site was "very dirty."
The motion court should have granted plaintiff partial summary judgment on his Labor Law § 241(6) claim predicated on violations of Industrial Code §§ 23-1.7(d) and 23-1.7(e)(1) and (2). Plaintiff met his burden of showing that these provisions applied; that Padilla violated the specific commands of these provisions; that the violations constituted negligence; and that the violations proximately caused plaintiff's injuries (see Bazdaric v Almah Partners LLC, 41 NY3d 310, 319-322 [2024]). In response, the City failed to raise a triable issue of fact.
Industrial Code § 23-1.7 is entitled "Protection from general hazards." Subsection (d) provides:
"Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing."[FN1]
The sole basis for the motion court's finding that § 23-1.7(d) was inapplicable to plaintiff's accident was the court's conclusion that the plastic upon which plaintiff slipped did not constitute a "foreign substance." The court (and the City) relied on Bazdaric v Almah Partners LLC for this proposition (203 AD3d 643, 644 [1st Dept 2022] [plastic sheeting covering escalator steps was not a "foreign substance" under Industrial Code § 23-1.7(d) because it was "not similar in nature to the foreign substances listed in the regulation, i.e., ice, snow, water or grease"]). However, the decision was subsequently reversed by the Court of Appeals (Bazdaric, 41 NY3d at 320, [plastic sheet was a "foreign substance" under the regulation as it shared the same slippery quality as "ice, snow, water, and grease"]).
Plaintiff also relies on Industrial Code §§ 23-1.7(e)(1) and (2). Those sections provide:
"Tripping and other hazards.
"(1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered.
"(2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed."[FN2]
The sole basis for the motion court's finding that sections 23-1.7 (e)(1) and (2) were inapplicable was its erroneous [*3]conclusion that "the subject piece of plastic was part of the demolition work [p]laintiff's employer, Padilla, was contracted to perform, thus, it constituted an integral part of the work." This view misconstrues the defense.
The plastic and the rock were not integral to the work performed by plaintiff or his coworkers because it constituted an accumulation of debris from previous work that was left in a "passageway" or "working area" which should have been kept free of debris (see Rossi v 140 W. JV Mgr. LLC, 171 AD3d 668, 668 [1st Dept 2019] ["The debris, consisting of cables from elevator shaft demolition, was not inherent in, or an integral part of, the work being performed by either plaintiff electrician or Vanquish at the time of the accident . . . but rather constituted an accumulation of debris from which Vanquish was required to keep work areas free"]; Tighe v Hennegan Constr. Co., Inc., 48 AD3d 201, 202 [1st Dept 2008] [debris accumulated as a result of demolition "was not an integral part of the work being performed by the plaintiff at the time of the accident"]; see also Bazdaric, 41 NY3d at 320 [integral to the work defense "applies only when the dangerous condition is inherent to the task at hand"]).
The "task at hand" did not involve demolition. It is uncontested that plaintiff and his coworkers were dismantling and rebuilding a sidewalk bridge at a new location and that plaintiff fell when he slipped and tripped while manually transporting a heavy beam to the new location. While it is undisputed that Padilla was a general contractor that did demolition work, the court's overly broad view of the integral to the work defense reads sections 23-1.7(e)(1) and (2) out of existence.
The City's reliance on plaintiff's testimony that Padilla used plastic sheeting to cover recently poured sidewalk cement to protect it from the rain fares no better. The City speculates that plaintiff may have fallen on plastic that was covering recently poured cement because plaintiff fell roughly 30 feet from one sidewalk and 50 feet from another sidewalk. However, plaintiff testified that he slipped and tripped on discarded plastic sheeting that covered a rock approximately 30 feet inside a passageway in the station. Plaintiff could not have slipped and tripped on plastic sheeting that was protecting recently poured cement from the rain because the accident occurred inside the station.
There is nothing in the record to indicate that Padilla could not simultaneously conduct the work and comply with the commands of sections 23-1.7(e)(1) and (2) (see Bazdaric, 41 NY3d at 321 ["the particular commands of the Industrial Code may not apply if they would make it impossible to conduct the work"]).
Finally, the City unpersuasively argues that plaintiff is not entitled to partial summary judgment under Labor Law § 241(6) because an issue of fact exists as to his credibility. According to the City, plaintiff's testimony that he slipped and tripped on plastic that [*4]was covering a rock "chang[es] details" in his story. The City points to the evidence that it submitted below (i.e., the affidavit of superintendent Michael Khmil, the accident reports, the medical records, and plaintiff's workers' compensation C-3 form). The City argues that this evidence contradicts plaintiff's testimony because the evidence does not mention that plaintiff slipped and tripped on plastic that was covering a rock.
Assuming the admissibility of this evidence, plaintiff's deposition testimony is not inconsistent with it (see Piedra v 111 W. 57th Prop. Owner LLC, 219 AD3d 1235, 1235 [1st Dept 2023] ["That plaintiff reported to his foreman only that he fell, without mentioning that he slipped or tripped on wood debris, does not detract from his credibility, nor does plaintiff's report to the foreman qualify as an inconsistent statement"]; Ping Lin v 100 Wall St. Prop. L.L.C., 193 AD3d 650, 652 [1st Dept 2021] [the plaintiff's testimony was not inconsistent "merely because he gave a more detailed description of how the accident occurred at his deposition, as compared to his terse statement to his supervisor immediately after his fall"]).
Moreover, as plaintiff points out, the evidence is neither reliable nor admissible. It is uncontested that plaintiff did not speak English, that he spoke Portuguese, and that Padilla's foreman, "Teixeira," who spoke Portuguese, would translate for him. Notably, in his affidavit, Khmil did not aver that he spoke Portuguese, yet he stated that plaintiff described the details of his accident to him.
When the City originally opposed plaintiff's motion for partial summary judgment under Labor Law § 241(6), it relied on Khmil's affidavit, claiming that plaintiff reported the accident directly to him. On appeal, the City changes its story to avoid the language barrier problem raised in plaintiff's motion papers below. The City now attempts to rely on plaintiff's testimony that he "told his foreman [Teixeira] the details the following Monday, which the foreman then relayed to the superintendent [Khmil] in [plaintiff's] presence." However, the City did not submit an affidavit from Teixeira (or any other Portuguese speaker) stating that he accurately translated to Khmil the information that plaintiff provided to him (see Quispe v Lemle & Wolff, Inc., 266 AD2d 95, 96 [1st Dept 1999]). The City's revised position indicates that Khmil's affidavit is unreliable (and, consequently, so are the accident reports that he prepared).
In any event, the City relies on evidence that is based on hearsay, which cannot, standing alone, defeat summary judgment (see Nava-Juarez v Mosholu Fieldston Realty, LLC, 167 AD3d 511, 512 [1st Dept 2018]). The City failed to establish that plaintiff was the source of the information recorded and that the information was accurately translated, which is necessary to qualify the information under an exception to the hearsay rule (see e.g. Quispe, 266 AD2d at 96 [hospital triage report inadmissible [*5]under an exception to the hearsay rule as a business record or an admission against interest because it required "a showing by [the] defendants, as proponents of the evidence, that [the] plaintiff was the source of the information recorded . . . and that the translation was provided by a competent, objective interpreter whose translation was accurate"]; Nava-Juarez, 167 AD3d at 512 ["Defendants, as the proponents of the evidence, were obligated to show that (the) plaintiff was the source of the information recorded in the C-3 . . . and that the translation was provided by a competent, objective interpreter whose translation was accurate" (internal quotation marks omitted)]). The statements in the medical records, which were not authenticated or certified, were also hearsay because "the disputed cause of plaintiff's injury . . . [was] not germane to plaintiff's diagnosis or treatment" (Quispe, 266 AD2d at 96).
The court properly granted the City's motion for summary judgment dismissing the Labor Law § 241(6) claim insofar as predicated on the remaining Industrial Code sections. The piece of plastic and rock, which were byproducts of demolition and concrete work, were not a "material pile" under Industrial Code § 23-2.1(a)(1). The broken pieces of wood from forms in the accident area, which were from concrete work, were also not a "material pile" and, in any event, were not a proximate cause of the accident (see Langer v MTA Capital Constr. Co., 184 AD3d 401, 402 [1st Dept 2020]). For the same reason, Industrial Code § 23-2.2(d) also does not apply, as any violation was not a proximate cause of the accident. Concerning the alleged violation of Industrial Code § 23-3.3(k)(1)(ii), the piece of plastic and rock were not "materials" being "stored" (see Sande v Trinity Ctr. LLC, 188 AD3d 505, 506 [1st Dept 2020]).
The City established its prima facie entitlement to judgment as a matter of law on the causes of action alleging common-law negligence and a violation of Labor Law § 200 by demonstrating that they did not have actual supervisory control over the means and method of plaintiff's work (see Ortega v Everest Realty LLC, 84 AD3d 542, 543 [1st Dept 2011]). The City's mere retention of the contractual privilege to override hazardous means and method of the work is insufficient to infer actual supervisory control (see Brown v New York City Economic Dev. Corp., 234 AD2d 33, 33 [1st Dept 1996]). Similarly, the City's representatives' presence at the site and their inspections of the site are insufficient to infer actual supervisory control (see Foley v Consolidated Edison Co. of N.Y., Inc., 84 AD3d 476, 477-478 [1st Dept 2011]).
However, to the extent those causes of action are also predicated on the existence of a dangerous or defective condition, triable issues of fact remain as to whether the City had actual or constructive notice (see Jackson v Hunter Roberts Constr., L.L.C., 205 AD3d 542, 544 [1st Dept 2022]). The City's witness did not testify [*6]to a lack of knowledge of debris in the accident area, thereby failing to establish lack of actual notice (see id.). The City also failed to present evidence of any cleaning or maintenance schedule with respect to the accident area (see Aramburu v Midtown W. B, LLC, 126 AD3d 498, 500 [1st Dept 2015]). Furthermore, there are triable issues of fact as to whether the City had constructive notice of a dangerous or defective condition on the premises that was visible and apparent prior to plaintiff's accident (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 27, 2024

Footnotes

Footnote 1: The City does not dispute that the area where plaintiff fell constituted a floor, passageway, or walkway under Industrial Code § 23-1.7(d).

Footnote 2: The City does not dispute that the area where plaintiff fell constituted a passageway under section 23-1.7(e)(1) or a working area under section 23-1.7(e)(2).